UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUGET SOUND ELECTRICAL WORKERS HEALTHCARE TRUST, | |
| Plaintiff, | Case No. 17-975-RAJ |
| v. | ORDER |
| STACEY LEMASTER, *et al.*, | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff Puget Sound Electrical Workers Healthcare Trust's ("Puget Sound Healthcare") Motion for Temporary Restraining Order. Dkt. # 2.  Puget Sound Healthcare requests that the Court enter a TRO without notice to Defendants Stacey LeMaster, Kim LeMaster, and Christopher Michael Davis, PS.  Dkt. # 4.  For the reasons that follow, the Court **GRANTS** Puget Sound Healthcare's motion.

## II.   BACKGROUND

The Court describes the facts as Puget Sound Healthcare alleges them in its Verified Complaint. Dkt. # 1.  Puget Sound Healthcare is a trust fund created under the Labor Management Relations Act of 1947 that provides and administers healthcare coverage for eligible employees, dependents, and beneficiaries.  ¶ 1.1.  Stacey and Kim LeMaster are covered under one of the plans that Puget Sound Healthcare administers. ¶ 3.2.  Their child, H.L, is also covered.  *Id.*  On or about February 19, 2016, H.L.

ORDER – 1

sustained injuries in an accident caused by a third party.  ¶ 3.3.

The LeMasters' healthcare plan establishes that Puget Sound Healthcare has certain rights of subrogation and reimbursement.  ¶ 3.4.  The plan provides:

> If you or your dependent has an injury claim that is payable by a third party or another policy or plan, but can demonstrate that payment from the other party, policy or plan is likely to be delayed for at least 90 days, this Plan will provide benefits if you (or your dependent) agree in writing to cooperate with this Plan in enforcing its subrogation rights against the other party, policy or plan.

*Id.*  To obtain coverage for an accident caused by a third party, a participant must sign a subrogation-reimbursement agreement.  ¶ 3.5.  On July 8, 2016, Stacey LeMaster signed a subrogation-reimbursement granting Puget Sound Healthcare subrogation rights against the responsible third party, requiring that he submit medical bills and other information, prohibiting him from taking actions that would prejudice Puget Sound Healthcare's subrogation rights, and obligating him to reimburse Puget Sound Healthcare in the event he recovered payment from the third party.  *Id.*  Puget Sound Healthcare disbursed $19,738.78 in payments to cover H.L.'s medical treatment for the accident.  ¶ 3.6.

Since issuing these payments, LeMaster has settled his claims for H.L.'s accident with the responsible third party.  ¶ 3.7.  LeMaster did so with the assistance of attorney, Defendant Christopher Michael Davis, P.S., who has or will soon obtain control over the settlement proceeds.  ¶ 3.9.  Davis' paralegal notified Puget Sound Healthcare that the firm has "obtained" the settlement proceeds at issue.  ¶ 3.13.  The settlement proceeds significantly exceed the amount of payments that Puget Sound Healthcare issued to LeMaster.  ¶ 3.7.

Puget Sound Healthcare has contacted Davis and asserted its right to be reimbursed for the $19,738.78 in medical payments.  ¶ 3.11.  Davis refused to acknowledge Puget Sound Healthcare's claim to the funds and threatened to file a bar complaint and Rule 11 motion in the event that Puget Sound Healthcare seeks relief under ERISA.  ¶ 3.12.  Davis also indicated that his firm "will be closing our file" on

LeMaster's settlement. ¶ 3.10.

Now, Puget Sound Healthcare moves for a TRO enjoining Davis from disbursing or dissipating the settlement proceeds obtained in the settlement. Dkt. # 2. It requests that the Court issue a TRO without notice to Defendants because of the risk that notifying them would heighten the risk of losing the settlement proceeds.

### III. LEGAL STANDARD

To obtain preliminary injunctive relief, Puget Sound Healthcare must "establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a TRO is the same. *ProtectMarriage.com - Yes on 8 v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). The Ninth Circuit employs a "sliding scale" approach, according to which these elements are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

"Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." Local Rules W.D. Wash. LCR 65(b)(1). The Federal Rules further provide that

> The Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Unless these requirements are satisfied, "the moving party must

ORDER – 3

serve all motion papers on the opposing party before or contemporaneously with the filing of the motion and include a certificate of service with the motion." Local Rules W.D. Wash. LCR 65(b)(1). After the motion is filed, the Court "may consider the motion on the papers or schedule a hearing." Local Rules W.D. Wash. LCR 65(b)(3).

## IV. DISCUSSION

First, Puget Sound Healthcare has shown there is a likelihood of success on the merits. ERISA authorizes Puget Sound to bring an action to redress violations of the plan under 29 U.S.C. § 1132(a)(3). ERISA further "provides for equitable remedies to enforce plan terms." *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006). The Supreme Court has concluded that the relief sought here—in which Puget Sound Healthcare seeks reimbursement from "specifically identifiable funds that [are] in the possession and control of the [Defendants]"—is equitable. *Id.* at 362–63.

Second, Puget Sound Healthcare will suffer irreparable injury in the absence of a TRO. If Davis disburses the funds, Puget Sound Healthcare is at risk of losing its remedies under ERISA. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092-93 (9th Cir. 2012) (finding that "the reimbursement agreement must 'specifically identif[y] a particular fund, distinct from the [beneficiary's] general assets,' from which the fiduciary will be reimbursed. . . [and] the funds specifically identified by the fiduciary must be 'within the possession and control of the [beneficiary.'") (internal citations omitted). Puget Sound Healthcare has also shown there is a risk that notice of this TRO would result in the disbursement of the settlement proceeds. Dkt. # 4.

Third, the balance of the equities weighs in favor of granting a TRO. In granting Puget Sound Healthcare's motion, the Court is maintaining the status quo until a forthcoming preliminary injunction hearing. In light of such a dichotomy—risking the potential disbursement of disputed funds versus maintaining the status quo—the balance of the equities tips in favor of Puget Sound Healthcare.

ORDER – 4

Finally, granting the TRO advances the public interest. As Puget Sound Healthcare contends, enforcing reimbursement and subrogation provisions are beneficial to ensuring the stability of ERISA plans.

## V.  CONCLUSION

The Court has reviewed and considered Puget Sound Healthcare's verified complaint, motion, exhibits, supporting certificate, and the applicable law.  The Court **GRANTS** Puget Sound Healthcare's Motion for Temporary Restraining Order.  Dkt. # 2. The Court issues this TRO **without notice** to Defendants. Defendants are **RESTRAINED** from disposing of or dissipating any portion of the alleged settlement funds until **fourteen (14) days from the date of this Order**, unless otherwise directed by the Court.

Having entered this TRO without notice to Defendants, the Court **ORDERS** Puget Sound Healthcare to immediately serve upon Defendants a copy of the complaint, moving papers, and this Order.  **No later than 12:00 p.m. PST on Friday, June 30, 2017,** Puget Sound Healthcare must certify that it has delivered these documents to Defendants.

Defendants may, on or before July 5, 2017, oppose the conversion of this TRO into a preliminary injunction.  The Court will not consider a Reply from Puget Sound Healthcare.  **The Court sets a preliminary injunction hearing at 10:00 a.m. on Thursday, July 6, 2017.**  The Court reserves the matter of whether a bond must be posted until this hearing.

DATED this 28th day of June, 2017.


_Richard A Jones_
The Honorable Richard A. Jones
United States District Judge